NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
JUN 28 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-25-KSF

TRACY ROWE                                                       PETITIONER

VS:               **MEMORANDUM OPINION AND ORDER**

MR. BOOKER                                            RESPONDENT

\* \* \* \* \*

This matter is ripe for decision on Tracy Rowe's petition for writ of habeas corpus, pursuant to 28 U.S.C. §2241.

BACKGROUND

On January 21, 2005, Tracy Rowe, a federal prisoner in the Federal Medical Center in Lexington, Kentucky, paid the district court filing fee and filed the instant *pro se* petition. He has claimed that he is entitled to credits toward his federal sentence for time spent in jail, from July 24, 2002 through November 19, 2003, but the Bureau of Prisons ("BOP") has denied him the credits.

Upon screening, the Court construed and summarized the petitioner's allegations and exhibits, as follows:

> According to Petitioner Rowe, he was convicted of possession with intent to distribute crack cocaine in the Northern District of Georgia, No. 2:02-CR-51-01-WCO, on December 6, 2002. In one of the petitioner's exhibits, a later Order in that case, the Court describes Rowe's voluntary surrender and arrest on July 16, 2002, on a state parole violation warrant, and his later transfer to federal custody, pursuant to a writ *ad prosequendum*, for his guilty plea and sentencing (ultimately 120 months). After the federal sentencing, on January 10, 2003, the petitioner's state parole was revoked and he was ordered to serve out his state sentence in jail. The petitioner was

returned to state custody on June 13, 2003.[1] At some point, the petitioner wrote to the federal court with the request that the court order his transfer to federal custody so as to begin serving his federal sentence.

In the attached Order responding to that request, the Court sets out pertinent dates and facts in the record and the language of the state's order revoking parole, which contains conflicting language as to whether Rowe was ordered to serve his remaining sentence in state custody or "concurrently with any Federal Sentence this subject may be serving."[2] The district court's Order concludes as follows:

> The court recounts the history of this case and the details of the petitioner's parole revocation order with the full knowledge that it lacks the jurisdiction to order the state of Georgia to release Mr. Rowe to federal custody. The court hopes this recitation might be of some help to the United States Bureau of Prisons ("B.O.P.") when it eventually has to determine the appropriate "start date" for petitioner's federal sentence. If the BOP determines it was the state's intention to have petitioner's state sentence run concurrent with his federal sentence, then petitioner might be entitled to federal credit for the time he has been serving in state custody. Nevertheless, that is a question for a different federal entity (the B.O.P.) at a later date (petitioner's maximum release date from state custody appears to be June 17, 2004). See United States v. Wilson, 503 U.S. 329, 331 - 33 (1992) (Attorney General is responsible for computing credits towards federal sentences). See also 28 C.F.R. § 0.96 (1992) (delegating that authority to the B.O.P.).
>
> The court notes that even though it does not have the authority to grant petitioner's request, he is not without recourse. If petitioner feels he is being held in violation of the laws of the United States, he is free to initiate an action for a writ of habeas corpus. Alternatively, if the petitioner decides to wait and see if the B.O.P. gives him federal credit for some of his "state time," he would be free to challenge that decision, again through a habeas action. See United States v. Gabor, 905 F.2d 76, 77-78 (5th Cir. 1990) (challenges to B.O.P. calculation must be made pursuant to 28 U.S.C. § 2241). Either way, the court

---

[1] The district court stated that this was the date of his return to state custody, confirmed on the Georgia Department of Corrections website. Another exhibit to the instant petition, a February 9, 2004 memorandum of a BOP official at FMC-Lexington, gives two other dates for Rowe's return to state custody, one being May 15, 2003, and the other being June 13, 2003. In the administrative remedy documents, the petitioner has handwritten June of 2003 as his date of return to state custody.

[2] The petitioner also attaches a copy of the Georgia revocation order of January 10, 2003.

> lacks jurisdiction to grant petitioner's pending request, which is hereby **DENIED**.
>
> Attachment, Order dated October 23, 2003.
>
> Apparently, the instant petitioner took the Court's words to heart. After his transfer to federal custody, the petitioner began [and finished] the administrative process for obtaining additional jail credits, to begin as of July 24, 2002. . . .

Record No. 3. The petitioner having apparently exhausted his administrative remedies and having shown that some mistakes in his custody were made, the Court directed service of the petition on the respondent.

## RESPONSE

In his response [Record No. 7], the warden begins with a chronology of the relevant dates and events, which is virtually identical to the petitioner's and is supported by an attached declaration of the FMC-Lexington's inmate systems manager, Georgetta Richardson. Additionally, Ms. Richardson supplies the government's explanation of why certain of the events took place, and she provides copies of all of the documents exchanged in the administrative remedy process about the issue.

With regard to the petitioner's being taken from state to federal custody on July 24, 2002, she explains that the writ *ad prosequendum* was for him to appear in federal court on charges pending there. He eventually pled guilty to 4 counts in the indictment and on December 6, 2002, he was sentenced on these counts.[3] One month later came the Georgia Board of Pardons and Paroles' January 10, 2003 revocation order, revoking Rowe's state parole for the December 6th conviction and mandating that the petitioner serve out the remainder of the state sentence imposed on August 8, 1996. The Order also directed that the petitioner "be delivered to the State Department of

---

[3] His initial sentence of 151 months' imprisonment was later reduced to 120 months.

3

Corrections" and that the revocation "run concurrent with any Federal sentence this subject may be serving."

The petitioner remained in federal custody under the writ *ad prosequendum,* however. The respondent's explanation is that state officials refused to take him back from the U.S. Marshals, "[d]ue to information not being passed from various agencies." Attached administrative documents have May 15, 2003, as the date on which the petitioner was returned to state custody. He remained in state custody in service of the state sentence until he was released on parole on November 19th and on November 20, 2003, came into federal custody to begin service of the federal sentence.

As to credits toward his federal sentence for the July 24, 2002 - November 20, 2003 time period, beginning with his transfer to the custody of the U.S. Marshals on the writ *ad prosequendum* and continuing through state custody in service of the state sentence, it is the respondent's position that the petitioner is not entitled to the credits he seeks for any time period. The State of Georgia has credited the petitioner for all time spent in jail and in federal custody from June 18, 1996, before his original August 8, 1996 sentencing, until the November 20, 2003 date. A federal prisoner is not entitled to receive the same credits toward his federal sentence as he has already received toward another sentence, under 18 U.S.C. §3585(b); BOP Program Statement 5880.28; and the United States Sentencing Guidelines, Section 5G1.3, Application Note 6.

<u>Petitioner's Reply</u>

The *pro se* petitioner has filed a reply [Record No. 8]. As to the facts, he claims that when he surrendered to state authorities on July 17, 2002, "[t]he violation term of imprisonment was for 1 week." At the end of that week, on July 24th, he was held longer only because of the federal authorities' "hold," for the purpose of his going to the federal court and answering the cocaine

4

charges there. The state authorities' refusal to re-take custody was purportedly because the petitioner had served the week in jail and so the state had no reason to re-take him. Also, he insists that he was not returned to state custody until June 13, 2003, not May 15, 2003.

With regard to his being legally entitled to have the credits applied to both sentences, the petitioner points to the Georgia Revocation Order of January 10, 2003, directing his state sentence to "run concurrent with any Federal sentence this subject may be serving." The petitioner also invites the Court to call his probation officer about the truth of these facts and other assertions, and he provides the telephone number. His only citation to supporting law is to *United States v. Blankenship*, 733 F.2d 433, 434 (6th Cir. 1984).

## DISCUSSION

The respondent correctly understands 18 U.S.C. §3585 and case law flowing therefrom. The statute reads in pertinent part as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences --
>> (1) as a result of the offense for which the sentence was imposed; or
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

18 U.S.C. §3585(b) (emphasis added). Under the statute, it is the Attorney General, through the Bureau of Prisons, who is authorized to grant a prisoner credit for pre-sentence detention. *Id.*; *United States v. Wilson*, 503 U.S. 329, 333-35 (1992); *United States v. Westmoreland*, 974 F.2d 736, 737 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 1818 (1993). In the same statute, Congress has limited the available credits, specifying that the BOP can credit only time "that has not been credited against

5

another sentence." *Id.* A district court, however, may grant a petitioner equitable relief under 28 U.S.C. §2241. *Wright v. United States Board of Parole*, 557 F.2d 74, 77 (6th Cir. 1977).

On its face, the statute precludes the "double counting," which the instant petitioner seeks from the time he was surrendered to federal authorities pursuant to the writ on July 24, 2002, through his time in that custody until returned to state authorities in May or June of 2003, and from then through his service of the remainder of the state sentence until November 20, 2003, because all of this time was credited to the state sentence. Therefore, he is not entitled to have them also credited toward his federal sentence.

This is not the end of the matter, however. The respondent admits that the petitioner's prolonged federal custody pursuant to the writ was the result of what used to be called "a failure to communicate." Had the U.S. Marshal Service promptly returned the petitioner to state custody and/or had the state surrendered him for service of the federal sentence immediately upon revoking his parole, the petitioner's start date for service of the federal sentence could have been as early as its December 6, 2002 imposition or the January 10, 2003 state decision date, rather than November 20, 2003. This is not an unsubstantial amount of time which the petitioner must serve.

The petitioner's sentencing court was apparently concerned with the result reached for him, *i.e.*, credits toward service of his federal sentence do not begin until almost a year after the sentence was imposed, through no fault of the petitioner. In its Order of October 23, 2003, the United States District Court for the Northern District of Georgia ruled that it did not have jurisdiction to assist the petitioner but that when the BOP calculates his "start date" for the federal sentence, "then the petitioner might be entitled to federal credit for the time he has been serving in state custody."

6

The exhibits herein reveal that the BOP, at every level, found that the credits which the petitioner sought are "prohibited" under 18 U.S.C. §3585(b). Thus, we have recognition by both the United States District Court for the Northern District of Georgia and the BOP that they are powerless to grant him the relief he seeks. There is case law, however, which suggests that this Court may require the BOP to consider the petitioner for a *nunc pro tunc* designation of the state facilities and/or holdovers as the location for service of the first part of his federal sentence.

The instant petitioner's facts are close to the facts, analyses, and consistent results presented in some §2241 cases outside of this circuit. In several cases, the federal sentences were handed down prior to the state's resolution of its charges, as herein, and so the judgments, of course, were silent as to the federal sentencing court's intent with regard to any state's disposition of pending matters. Yet service of the federal sentence was delayed until completion of the state sentence. In *Rodriguez v. Pitzer*, 76 Fed.Appx. 519, 2003 WL 21805912 (5th Cir. 2003) (unpublished), after his federal sentencing, the state court revoked Rodriguez's parole and the §2241 petitioner spent the next 5 years in state prison. When he was handed over to the federal prison to begin service of the federal sentence, like the instant petitioner, Petitioner Rodriguez asked for the time spent in state prison to be credited to his federal sentence, and the BOP refused.

The record before the *Rodriguez* court had evidence that the federal court knew of pending state charges at the time of sentencing; and later, when the BOP submitted the prisoner's *nunc pro tunc* request to that court, it "submitted nothing to show an intent for the sentences to run concurrently." *Id.* at **1. Therefore, on that record and because the BOP had thus "fulfilled its obligation to consider [the petitioner's] request for a *nunc pro tunc* designation," the appellate court affirmed the denial of relief to Petitioner Rodriguez. *Id.*

7

Also, in *McCarthy v. Doe*, 146 F.3d 118, 121 (2nd Cir. 1998), and *United States v. Pineyro*, 112 F.3d 43 (2nd Cir. 1997), the United States Court of Appeals for the Second Circuit noted that the federal sentences therein were silent as to whether the sentence should be served consecutively or concurrently with a not-yet-imposed state sentence. Upon the petitioners' requests for a retroactive designation of the state prison as the place of incarceration for his federal sentence, the BOP denied the requests. The appellate court examined the interplay between 18 U.S.C. §3584; the BOP's power to make a *nunc pro tunc* designation under 18 U.S.C. §3621(b); and the BOP's requirement that the petitioner obtain the federal court's recommendation during the administrative remedy process.

In Pineyro's case, the judge recommended against the designation but the appellate court noted that the district court's recommendation was not binding. However, the prisoner had not yet requested, been denied, and appealed the *nunc pro tunc* issue "through the appropriate administrative and judicial channels," and so the petition was dismissed for failure to exhaust. *Pineyro*, 112 F.3d at 45-46.

In Petitioner McCarthy's case, the BOP's denial was apparently based on its belief that it did not have the power to grant the prisoner's request. This time the court ruled that the BOP did have authority under 18 U.S.C. §3621(b), and so the appellate court remanded to the district court with instructions to remand the request to the BOP "to give [the designation] request full and fair consideration." *McCarthy*, 146 F.3d at 123.

In the case *sub judice*, Petitioner Rowe administratively exhausted his claim for credits toward his federal sentence for time which had already been credited to his state sentence, a request clearly barred by operation of 18 U.S.C. §3585. This Court concurs with the BOP and will not grant the petitioner relief on this claim. However, the Court is troubled by the October 2003 Order of the

8

trial court, indicating that the petitioner should be able to obtain relief in his favor, and by one aspect of the BOP Regional Director's response in the administrative remedies pursued by the instant petitioner, *i.e.*, the Director suggests that the BOP did consider a designation but concluded that it was powerless to grant it:

> A review for retroactive designation has been conducted in your case. Section 5G1.3, Application Note 6., of the United States Sentencing Guidelines, indicates the United States District Court's sentence in Case Number 2:02-cr-51-01-WCO, should run consecutive to your state parole violation term. Based upon this information, credit for the period which you request *cannot* be provided.

Respondent's Exhibit C (emphasis added).

The Court finds that the BOP's one reference to a "retroactive designation" and its opinion that the petitioner's federal sentence "should run consecutive" is too insufficient a record for this Court to rule on the matter of a *nunc pro tunc* designation, particularly since the petitioner did not exhaust the matter in the administrative proceedings. Additionally, the sentencing court's one allusion that relief for the petitioner "might" be a possibility through habeas is also insufficient for this Court to rule in favor of equitable relief on the record before it.

Exhaustion of a *nunc pro tunc* question by the petitioner should result in the BOP's consideration of the issue on the merits. Perhaps the administrative request will even result in a *nunc pro tunc* designation. If not, it will provide fuller development of a record for this Court's consideration. The Court will not address the matter prematurely herein. The petitioner's projected release date, via good conduct time, is not until August 6, 2012, and so he will not be prejudiced by the time consumed should he decide to exhaust the matter and come to federal court again.

Like the *Pineyro* court, this Court will dismiss the instant petition, but herein instructs the petitioner that if he seeks the *nunc pro tunc* designation so that any part of his incarceration prior

9

to November 20, 2003, may count toward his federal sentence, then he must request the designation, and he "must challenge the decision of the BOP not to designate the state prison as his place of confinement for the federal charge through the appropriate administrative and judicial channels." 112 F.3d at 45-46.

The Court's disposition herein is similar to that reached in *Thomas v. Bogan*, 70 F.3d 1273, 1995 WL 692987 (6th Cir. 1995) (unpublished) (double credits impermissible under 18 U.S.C. §3585 but the §2241 petitioner had not yet exhausted alternative bases for relief).

## CONCLUSION

Accordingly, the Court being advised, **IT IS HEREBY ORDERED** as follows:

(1)     The instant petition for writ of habeas corpus is **DENIED**;

(2)     the plaintiff's claim for credits toward his federal sentence for July 24, 2002 through November 19, 2005, time which was already credited to his state sentence, is **DISMISSED WITH PREJUDICE**, based upon the prohibition in 18 U.S.C. §3585, but with respect to any basis for equitable relief, this matter is **DISMISSED WITHOUT PREJUDICE**; and

(3)     a contemporaneous judgment shall be entered in favor of the respondent.

This the 28th day of June, 2005.

_____
KARL S. FORESTER, SENIOR JUDGE